**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DEPTH CHARGE MARINE, LTD.,

Plaintiff,

v.

F/V C. ANN, *in rem,* and JUSTIN J.
HALLAM, *in personam*,

Defendants.

Civil Action No. 24-6336 (RK) (TJB)

**OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon a Motion for Default Judgment (ECF No. 24) filed by Plaintiff Depth Charge Marine, LTD. ("Plaintiff" or "Depth Charge"). Defendant Justin J. Hallam, *in personam* ("Defendant" or "Hallam") is the owner of F/V C. ANN, *in rem* (the "Vessel", together with Hallam, the "Defendants"). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion for Default Judgment is **GRANTED in PART** and otherwise **DENIED** as moot.

## I.    BACKGROUND

    Plaintiff Depth Charge brings this action under maritime law and in connection with its two-page Agreement with Defendant Justin J. Hallam to provide services, such as fuel, storage, and maintenance to Defendant's vessel, the F/V C. ANN. Shortly after the parties came to their Agreement on November 20, 2020, Hallam stopped paying under the Agreement. Plaintiff made

multiple attempts to reach out to Hallam, including efforts to negotiate a resolution, but from November 20, 2020 to date, Hallam has been essentially unresponsive. As of the filing of the Motion, the Vessel remained in Plaintiff's possession, causing damage to Plaintiff's property, straining Plaintiff's resources, and creating additional risk to Plaintiff. Plaintiff seeks damages, fees, and costs; a declaration that the Vessel is abandoned; title to the Vessel; and equitable relief, in the alternative, to relocate or dispose of the Vessel.

A.    **FACTUAL HISTORY**

The Court accepts as true all of the following well-pleaded factual allegations in the Complaint and sworn declarations: Plaintiff Depth Charge Marine, LTD. is a New Jersey corporation that operates docking facilities that provide boating services such as fueling, maintenance, bait, tackle, storage, and mooring for vessels. (ECF No. 1 ¶¶ 6, 11.) Depth Charge has two docking facilities where the subject Vessel was docked at various points: one located at 57 Inlet Drive, Point Pleasant Beach, New Jersey, 08742 and another at 720 Ashley Ave, Brielle, New Jersey, 08730. (*Id.* ¶¶ 6, 16.) Defendant F/V C. ANN is a 45.5 foot steel hull fishing vessel constructed in 1977, identified by the United States Coast Guard ("USCG") as Vessel No. 581380. (*Id.* ¶¶ 7, 9.) A USCG Certificate of Documentation issued on October 14, 2020 identifies Defendant Justin J. Hallam as the owner of the Vessel. (*Id.* ¶¶ 8, 10.) The USGC's Abstract of Title on the Vessel, dated May 20, 2024, revealed the boat was sold to Hallam by Eric Svelling for $1 on April 25, 2019. (ECF No. 18-3 at 6.) The same day, and in apparent connection with the sale, Eric Svelling was granted a preferred mortgage in the amount of $145,000 on the Vessel. (*Id.* at 7.) The only other active interest in the property is Plaintiff's $15,000 lien, added on February 17, 2023. (*Id.*)

On November 20, 2020, Hallam and Depth Charge signed an "In House Account Agreement," (the "Agreement") which provides that Plaintiff will render services to the Vessel

including fuel, storage, and maintenance, in exchange for payment from Hallam. (ECF No. 1 ¶ 12; ECF No. 1-2.)

One month into the Agreement, Hallam fell behind on rent payments for the Vessel. (ECF No. 1 ¶ 15.) On July 8, 2021, William Cleary ("Cleary"), the Managing Member of Depth Charge, notified Hallam that he was five months behind on rent. (*Id.* ¶¶ 6, 16.) Cleary indicated in a letter that if Hallam did not respond within five days, he would move for a lien against Hallam for rent owed, late fees, and legal fees accrued. (*Id.* ¶ 16.) Although Hallam never responded, Plaintiff alleges Hallam did "come into the marina in person to pay for one month of overdue rent." (*Id.* ¶ 17.) According to Plaintiff, by the end of July 2021, Hallam no longer visited the Vessel or otherwise fulfilled his contractual obligations. (*Id.* ¶ 18.)

Over time, the Vessel's condition worsened putting significant strain on Plaintiff in the form of manpower, electric power, and other resources. (ECF No. 24-2 (Declaration of William Cleary ("Cleary Decl.")) ¶ 6.) In April 2022, Depth Charge sent Hallam another letter notifying him of the Vessel's dire situation, risk of sinking, and potential to "create[e] an environmental disaster." (*Id.* ¶ 19.) The letter further alleged the Vessel was "blocking the rehabilitation and reconfiguration of the marina causing additional damages." (*Id.*) At the time of the letter, total arrears of rent was $9,500. (*Id.* ¶ 20.) Hallam never responded to the letter. (*Id.* ¶ 22.)

In November 2023, following "increasing damage to [the] docks and difficulty to keep the Vessel afloat," Plaintiff moved the Vessel from Point Pleasant Beach, New Jersey to "a more protected marina" in Brielle, New Jersey to minimize the risk to the Vessel. (ECF No. 1 ¶ 29; Cleary Decl. ¶ 12.) Plaintiff then continued to render assistance to the Vessel to prevent it from deteriorating further. (Cleary Decl. ¶¶ 13–14.)

Prior to the filing of this action, Plaintiff filed suit against Defendants in the Superior Court of New Jersey, Ocean County (Case No. OCN-DC-001346-23) for unpaid rent under the Agreement. (*Id.* ¶ 10.) In that action, the court entered default judgment against Defendants in the amount of $17,400 (the "State Court Judgment"). (*See* ECF No. 1-3.)

This federal court action commenced with the filing of the Complaint on May 22, 2024. (ECF No. 1.) Defendant Hallam was served with a copy of the Summons and Complaint the following day, as indicated by the Return of Service. (ECF No. 5.) Defendant Hallam failed to Answer or otherwise respond to the Complaint within the time provided by Federal Rule of Civil Procedure 12 or at any point thereafter. On July 24, 2024, the Honorable Tonianne J. Bongiovanni, U.S.M.J. granted Plaintiff's motion to appoint Depth Charge as Substitute Custodian of the Vessel following its arrest. (ECF No. 9.) A Warrant for Arrest of the Vessel was issued by the Court on August 22, 2024. (ECF No. 10.) On September 13, 2024, the U.S. Marshals Service transferred possession of the Vessel to Plaintiff as Substitute Custodian. (ECF No. 14.)

In November 2024, Defendant and his wife, Patricia Hallam, filed a voluntary petition for Chapter 13 bankruptcy. (*In re Hallam*, No. 24-20914 ("Bankruptcy Case"), ECF No. 1 (Bankr. D.N.J. November 2, 2024).) As part of the voluntary petition, Defendant Hallam listed the subject Vessel, with an "unknown" value, as one of his properties. (*Id.* at 11.) Plaintiff Depth Charge was listed on the voluntary petition as a secured creditor with a judgment lien of $17,400. (*Id.* at 18.) On February 5, 2025, Plaintiff filed a Motion for Relief from the Automatic Stay (the "Relief Motion") for permission to continue pursuing this federal court action. (Bankruptcy Case, ECF No. 26.) A day later, and before the Bankruptcy Court ruled on the Plaintiff's Relief Motion, the bankruptcy case was dismissed. (Bankruptcy Case, ECF No. 27.)

Plaintiff's Motion before this Court seeks (i) a maritime lien for necessaries, i.e., services deployed to the Vessel during its storage; (ii) to declare the Vessel abandoned; (iii) a negligence damages award for Defendant's inaction vis-à-vis the Vessel; (iv) a salvage award for voluntarily assisting the Vessel; (v) an award of title to the Vessel; and (vi) equitable relief to arrange for the removal or relocating of the Vessel. In terms of additional compensation, Plaintiff seeks (i) unpaid rent until Plaintiff became Substitute Custodian; (ii) *Custodia Legis* fees, i.e., fees for the safekeeping of the Vessel following the appointment as Substitute Custodian; (iii) statutory taxable costs under Rule 54(d)(1); (iv) Prejudgment Interest; (v) Attorneys' Fees & Costs; and (vi) possible future costs to relocate the Vessel.

## II.    LEGAL STANDARD

### A.    DEFAULT JUDGMENT

Federal Rule of Civil Procedure ("Rule") 55 permits a party to apply for and the Court to enter default judgment against a party that fails to plead or otherwise defend claims asserted against it. Fed. R. Civ. P. 55(b)(2). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits . . . .'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). "Because the entry of a default judgment prevents the resolution of claims on the merits, '[the Third Circuit] does not favor entry of defaults and default judgments.'" *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Before entering default judgment, "a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages." *Days Inns Worldwide, Inc. v.*

*T.J. LLC*, No. 16-8193, 2017 WL 935443, at *2 (D.N.J. Mar. 9, 2017) (internal citations omitted). In addition, "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (internal citations omitted).

### B.    LOCAL ADMIRALTY AND MARITIME RULES

The District of New Jersey has special local rules for admiralty and maritime cases, including those involving motions for default judgment. The Local Admiralty and Maritime Rules ("LAMR") contained within Local Civil Rule 9.2, provide "[a] party seeking a default judgment in an action *in rem* must satisfy the Judge that due notice of the action and arrest of the property has been given [] by publication as required in LAMR (c)(2)." LAMR (c)(2) enumerates certain requirements for notice, including that it shall be published "in a newspaper of general circulation in the city or county where the property has been seized." Additionally, a plaintiff is required to serve "the complaint and warrant of arrest upon the Master or other person having custody of the property." LAMR (c)(3)(a). Additionally, "[i]f the defendant property is a vessel documented under the laws of the United States, plaintiff must attempt to notify all persons identified as having an interest in the vessel in the United States Coast Guard Certificate of Ownership." *Id.*

### III.    DISCUSSION

### A.    SERVICE AND JURISDICTION

### 1.    Service of Defendant Hallam

The Court first examines whether Defendant Hallam was properly served in this matter. A court may only enter default judgment against defendants who were properly served with process. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d

Cir. 1985)). Plaintiff "bears the burden of proof on that issue." *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993) (citing 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1083 (2d ed. 1987)). Plaintiff can meet this burden "by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Mills v. Ethicon*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019).

Here, according to an affidavit of service filed on the docket, Plaintiff served Hallam on October 15, 2024 by serving his wife, Patricia Hallam, through a process server at Hallam's Leonardo, New Jersey address. (ECF Nos. 3, 15.) The process server provided Patricia Hallam with the requisite papers.[1] Under Federal Rule of Civil Procedure 4, an individual defendant may be served by "leaving a copy of [the summons and the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). Thus, serving Hallam's wife at their house was sufficient service under Rule 4(e)(2)(B). *See Loc. 365 Pension Fund*, 2021 WL 1976700, at *3 (citing *Gold Kist, Inc.*, 756 F.2d at 18–19). Since being served, neither Hallam, nor an attorney on his behalf, has answered the Complaint or otherwise engaged in this litigation.

### 2.    Notice of Action and Arrest of the Vessel

Plaintiff also satisfied all four requirements for Due Notice of the Action and Arrest of the Property under the Local Admiralty and Maritime Rules, D.N.J. Local Civil Rule 9.2. First, a notice of action and arrest, consistent with the requirements of LAMR (c)(2), was published in the Asbury Park Press, a newspaper printed in Freehold, New Jersey, published in Neptune, New Jersey, and generally circulated in Monmouth and Ocean counties in New Jersey. (ECF No. 12.)

---

[1] The papers include (i) the Complaint and summons; (ii) the civil cover sheet; (iii) warrant for arrest; (iv) order for issuance of warrant for maritime arrest; (v) certified receipt for transfer of possession of defendant; (vi) motion and order for appointment of substitute custodian, (vii) a letter regarding the notice of arrest of defendant; and (viii) exhibits. (ECF Nos. 3, 15.)

Second, Hallam, as the only listed owner of the Vessel (*see* ECF No. 1-1), was served the Complaint and Warrant of Arrest. (*See* ECF No. 15); *see* supra § III.A.1. Third, Plaintiff attempted to appropriately notify Eric Svelling, who is listed in the USCG Abstract of Title as having a "Preferred Mortgage" of $145,000 (*see* ECF No. 18-3 at 7), through United States Postal Service Certified Mail, Return Receipt.[2] (ECF No. 18.) The Abstract of Title lists no other active liens, besides Plaintiff in this action. (*See generally* ECF No. 18.)

### 3.    Subject Matter Jurisdiction

Section 1333 of Title 28 of the United States Code codifies the Constitution's conferral of jurisdiction over "all Cases of admiralty and maritime Jurisdiction" to federal courts. U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1333(1). As here, maritime jurisdiction governs a matter involving a vessel stored at a dock facility. *See Sisson v. Ruby*, 497 U.S. 358, 367 (1990) ("[S]toring and maintaining a vessel at a marina on a navigable waterway is substantially related to traditional maritime activity."). This Court thus has subject matter jurisdiction over this case.

### 4.    Personal Jurisdiction

In addition to subject matter jurisdiction, this Court must also possess personal jurisdiction over Defendants. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). The Court has personal jurisdiction over Hallam because he resides in Leonardo, New Jersey. (ECF No. 1 ¶ 8.) For a vessel, its presence within a jurisdiction is sufficient for the purposes of personal jurisdiction. *See, e.g., Bank of W. v. Motor Vessel 2000 Fountain 27 Fever*, No. 00-6007, 2001 WL 1795540, at *3 (D.N.J. Dec. 6, 2001). The Court has personal jurisdiction over the

---

[2] Despite the notification, Eric Svelling has failed to file a statement of right, interest, possession or ownership.

Vessel because it is docked within the Court's "territorial confines," *see, e.g., Moyer v. Wrecked & Abandoned Vessel, known as Andrea Doria*, 836 F. Supp. 1099, 1104 (D.N.J. 1993), in Brielle, New Jersey.[3] (*Id.* ¶ 6.)

**B.    SUFFICIENCY OF THE COMPLAINT**

Before entering default judgment, the Court must determine whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citation omitted); *see also Animal Sci. Prods., Inc. v. China Nat'l Metals & Mins. Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) ("[A] litigant's failure to state a claim upon which relief may be granted . . . prevents the presiding court from entering a default judgment."). Just as a plaintiff must do to survive a motion to dismiss for failure to state a claim, he must, on default judgment, "establish[] that the essential elements of the pleaded claims are present and state[] factual allegations in support of these elements." *Animal Sci. Prods., Inc.*, 596 F. Supp. 2d at 849. "When a district court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 161 (3d Cir. 2022) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

**1.    Abandonment**

Plaintiff raises two overarching maritime law doctrines that could govern the Vessel: the law of salvage and the law of finds. (*See* ECF No. 24-1 at Count II, Count IV.) While there is "no clear line of demarcation" between the two doctrines, they serve unique purposes. *Ne. Rsch., LLC*

---

[3] In November 2023, the Vessel was moved from Point Pleasant Beach, New Jersey to Brielle, New Jersey. (ECF No. 1 ¶ 29.) As of the date of the filing of the Motion for Default Judgment, the Vessel remained at the Brielle, New Jersey marina.

*v. One Shipwrecked Vessel*, 729 F.3d 197, 208 (2d Cir. 2013) (citing *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 670 (5th Cir. 2000)). The law of finds has been "summed up succinctly as 'finders keepers.'" *Int'l Aircraft Recovery, L.L.C. v. Unidentified, Wrecked & Abandoned Aircraft*, 218 F.3d 1255, 1258 (11th Cir. 2000) (quoting *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 459 (4th Cir. 1992)). Conversely, "[t]he law of salvage generally governs efforts to save vessels in distress," where the original owner retains an ownership interest in the property. *Ne. Rsch., LLC*, 729 F.3d at 208 (quoting *Int'l Aircraft Recovery, L.L.C.*, 218 F.3d at 1258); *see also Deep Water Recoveries (S) PTE Ltd. v. Lost & Abandoned Silver Bullion*, No. 21-11949, 2024 WL 4903557, at *5 (D.N.J. Nov. 27, 2024).

To bring a vessel under the law of finds, a plaintiff must show, through clear and convincing evidence, that a vessel was abandoned. *See, e.g., Andrea Doria*, 836 F. Supp. at 1105 (citation omitted). Abandonment can be express or inferred from circumstantial evidence. *Ne. Rsch., LLC*, 729 F.3d at 210 (citation omitted). While maritime law employs a presumption against abandonment in order to protect the rights of owners, *id.*, lapse of time and nonuse are important factors in considering whether a vessel has been abandoned. *See Fairport Int'l Expl., Inc. v. Shipwrecked Vessel, Captain Lawrence*, 177 F.3d 491, 499 (6th Cir. 1999) ("[V]iew[ing] length of time as one factor among several relevant to whether a court may infer abandonment."). When these two factors are coupled with a failure to come forward during an action involving ownership rights, the inference of abandonment is even stronger. *See Bemis v. RMS Lusitania*, 884 F. Supp. 1042, 1049 (E.D. Va. 1995) (citing *Columbus-Am. Discovery Grp.*, 974 F.2d at 461). "Other factors include the place of the shipwreck *as well as the actions and conduct of the parties having ownership rights in the vessel.*" *Andrea Doria*, 836 F. Supp. at 1105 (citation omitted) (emphasis added).

The Court finds that Hallam has abandoned the Vessel through his inaction and complete disregard for the Vessel. Plaintiff argues that the Court should declare the Vessel abandoned because, at the time of filing the Motion for Default Judgment in February 2025, "it has been more than three years and seven months since Hallam last visited, maintained or paid for necessaries for the Vessel."[4] (ECF No. 24-1 at 16.)

Plaintiff's citation to *Massachusetts Port Authority v. Wreck of Kelly Ann*, a case in which a judge in the District of Massachusetts found "four years is more than sufficient" to constitute abandonment, is instructive. No. 90-11517, 1993 WL 137486, at *1 (D. Mass. Apr. 28, 1993). Much between *Kelly Ann* and the subject case is analogous: (i) a defendant "ha[d] shown no intent" to retrieve or tend to a vessel despite "frequent[] request[s]" to do so; (ii) defendant likely lacked funds to repossess the vessel; and (iii) the value of the vessel was less than its "transportation and disposal" costs. *Id.* Notwithstanding clear parallels, the instant case presents an even more compelling finding for abandonment. Unlike the defendant in *Kelly Ann* who participated in the litigation over the vessel and made "protestations that he still own[ed] the vessel," Hallam has continued his evasive and disinterested behavior by failing to participate in this action or the state court action before it. *See id.* ("A claim pursued spasmodically by an impoverished owner seeking to have another raise an available ship may constitute a continuing effort, but this case is not even that.")[5]

---

[4] Notwithstanding Hallam's complete inaction towards the Vessel, Hallam included it as an asset in his since-dismissed Chapter 13 bankruptcy action. (Bankruptcy Case, ECF No. 1 at 11.) The Court takes judicial notice of this fact.

[5] This District's *Andra Doria* decision provides additional support for the Court's conclusion that Hallam's dereliction vis-à-vis the Vessel constitutes abandonment. *See* 836 F. Supp. at 1104. That court found that where a vessel's location was known, inaction in the face of salvage efforts "implies a renunciation." *Id.* at 1105–06.

Considering the totality of the circumstances, the Court finds that Hallam abandoned the Vessel. Accordingly, the Court **GRANTS** Count II and finds the Vessel abandoned.[6]

### 2.    Title to Abandoned Property

Following a finding the Vessel was abandoned, title now transfers to Plaintiff. The then-existing occupant, i.e., one who "tak[es] possession of the property and exercise[s] dominion or control over it," receives title to abandoned property. *Andrea Doria*, 836 F. Supp at 1106 (citing *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 640 F.2d 560, 572 (5th Cir. 1981)). Here, Plaintiff has been in possession and control of the Vessel—at Plaintiff's own cost and detriment—since November 2020. (*See* ECF No. 1 ¶ 12.) This is sufficient to confer the title of the abandoned Vessel to Plaintiff. Count V seeking title under the law of finds is **GRANTED**.[7]

### 3.    Negligence

Plaintiff also seeks $10,000 in a negligence cause of action for damage to its property caused by Defendant's inaction. (ECF No. 1 ¶¶ 57–64; Cleary Decl. ¶ 18.) The Third Circuit described negligence in the admiralty context as "essentially coextensive with its common law counterpart, requiring:"

> (1) the existence of a duty required by law which obliges the person to conform to a certain standard of conduct; (2) a breach of that duty by engaging in conduct that falls below the applicable standard or norm; (3) a resulting loss or injury to the plaintiff; and (4) a

---

[6] No person has filed a statement of right, interest, possession or ownership in the Vessel. (*See* ECF No. 24-1 at 4.) This includes Eric Svelling, who is listed as having a lien on the Vessel, and who was notified of the Vessel's arrest. (*See id.*; ECF No. 18.)

[7] For this reason, Plaintiff's alternative request for a salvage award pursuant to the Law of Salvage is denied as moot. Just the same, the request for a maritime lien for necessaries is denied as moot because "one cannot have a lien on one's own property." *See United States v. Or. Lumber Co.*, 260 U.S. 290, 305 (1922). Plaintiff's request for equitable relief (Count VI) is also denied as moot. Because this Court confers title of the Vessel to Plaintiff, Plaintiff can utilize, relocate, or dispose of the Vessel as it wishes.

> reasonably close causal connection between the offending conduct
> and the resulting injury.

*In re Frescati Shipping Co., Ltd.*, 718 F.3d 184, 207 (3d Cir. 2013) (cleaned up). Negligence exists when there was a "fail[ure] to exercise that caution and diligence which the circumstances demanded, and which prudent men ordinarily exercise." *Grand Trunk R.R. v. Richardson*, 91 U.S. 454, 469 (1875). In determining whether Defendant can be liable for negligence, the Court looks to whether he "took reasonable precautions under the circumstances as known or reasonably to be anticipated." *Fischer v. S/Y Neraida*, 508 F.3d 586, 594 (11th Cir. 2007) (internal quotation marks and citations omitted). For example, in the face of a hurricane threat, boat owners have a duty to take reasonable precautions to protect a marina from harm, "including the duty to properly moor the boat, the duty to remove loose objects from the deck, and the duty to properly tie down anything that cannot be removed from the deck and may cause damage." *See Tucker v. Marina Mgmt. Corp.*, No. 20-5943, 2021 WL 11472766, at *4 (N.D. Fla. Nov. 24, 2021). Here, Hallam took no precautions whatsoever to mitigate harm to the marina from his deteriorating vessel.

Plaintiff meets all elements of negligence: (i) Hallam had a duty to act with reasonable care under the circumstances; (ii) by wholly failing to tend to the Vessel or liaise with Plaintiff in connection with the Vessel, Hallam failed to act with the requisite reasonable care; (iii) Plaintiff has damages nearing $18,000 to its docking facility[8]; and (iv) the Vessel is alleged to have caused damage to the pilings, dock, and other parts of the marina property. (Cleary Decl. ¶ 18.) As such, Count III for Negligence is **GRANTED** and Plaintiff is entitled to damages of $10,000.

---

[8] While Plaintiff alleges damages totaling approximately $18,000, it only seeks $10,000 for damage to its marina property. (ECF No. 24-1 at 9.) The total amount includes six pilings at $2,000 each and fifteen deck boards at $400 each.

### C.    DEFAULT JUDGMENT FACTORS

As the Third Circuit has long set out, whether a Court should enter default judgment depends on three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195).

Here, there is more prejudice to Plaintiff if default judgment is denied than there is to many other plaintiffs. While it is true that Plaintiff is prejudiced by the mere fact it has no other means to vindicate its claim, the injury to Plaintiff is unceasing as the subject Vessel remains docked at its marina and continues to subject Plaintiff's property to risk of further damage.

In terms of litigable defenses, the Court acknowledges it is "practically impossible" to determine possible defenses because Defendants have yet to participate in this action. *See GP Acoustics, Inc. v. Brandnamez, LLC*, No. 10-539, 2010 WL 3271726, at *4 (D.N.J. Aug. 17, 2010) (citation omitted). Further, Hallam has not only failed to participate, but he has also failed to engage with Plaintiff in any manner since around July 2021. (*See* ECF No. 24-1 at 6.) This provides further indicia that Defendant's litigable defenses are nonexistent.

Finally, Hallam's conduct is presumed to be culpable as he has failed to answer, move or otherwise respond to the Complaint. *See, e.g., Slover v. Live Universe, Inc.*, No. 08-02645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) (citation omitted); *Manin v. Gallagher*, No. 11-1261, 2012 WL 814367, at *3 (D.N.J. Mar. 9, 2012) (citation omitted).

Therefore, in finding that all factors favor Plaintiff, the entering of Default Judgment here is appropriate.

### D.    FEES AND COSTS

Plaintiff also seeks certain additional fees and costs in this matter. The Court will address each in turn.

#### 1.    *Custodia Legis* Fees

Plaintiff asserts it is entitled to an award of fees for the safekeeping of the Vessel as Substitute Custodian (ECF No. 24-1 at 20) consistent with the Court's July 24, 2024 Order. This Order provided that Plaintiff would be paid $50.00 per day for "security, wharfage, and routine services for the safekeeping of the vessel." (ECF No. 9 at 2.) The Court sees no reason to deviate from the prior Order. Therefore, Plaintiff remains entitled to compensation in the amount of $50.00 per day from September 13, 2024 (the date the U.S. Marshal Service transferred possession to Plaintiff as Substitute Custodian), (ECF No. 24-1 at 3), through the date of this Order. The Court **AWARDS** $10,500.00 in *Custodia Legis* fees.

#### 2.    Taxable Costs

Plaintiff also seeks taxable costs pursuant to Federal Rule of Civil Procedure 54(d)(1). Under Rule 54, unless otherwise barred, "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This applies just the same in cases of default judgment. *See, e.g., Maersk Line v. TJM Int'l Ltd. Liab. Co.*, 427 F. Supp. 3d 528, 538 (D.N.J. 2019). The costs allowed are those listed in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 163 (3d Cir. 2012). No other taxable costs can be assessed under this Rule. *SMP Props., LLC v. Encore Realty, LLC*, No. 20-6676, 2024 WL 1975502, at *4 (D.N.J. May 3, 2024) (citing *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012)).

According to the Declaration of Matthew T. Charles (ECF No. 24-3; "Charles Decl.") and attached exhibits (*see id.* at 9), the following taxable expenses have been incurred:

| Description of Item | Total |
|---|---|
| Clerk's filing fee | $405 |
| U.S. Marshal fees | $4,000 |
| Publishing fees | $81.24 |
| Printing & Copying | $28.00 |
| | Total = $4,514.24 |

Thus, the Court **AWARDS** Plaintiff $4,514.24 in taxable costs pursuant to Rule 54(d)(1) and 28 U.S.C. § 1920.

### 3.    Prejudgment Interest

Plaintiff next seeks prejudgment interest, which is favored under the rules of maritime law. "'The rule in admiralty is that prejudgment interest should be awarded unless there are exceptional circumstances that would make such an award inequitable.'" *Del. River & Bay Auth. v. Kopacz*, 584 F.3d 622, 634 (3d Cir. 2009) (quoting *Matter of Bankers Tr. Co.*, 658 F.2d 103, 108 (3d Cir. 1981)). "Generally, exceptional circumstances exist only when the district court concludes that the party requesting interest has (1) unreasonably delayed in prosecuting its claim, (2) made a bad

16

faith estimate of its damages that precluded settlement, or (3) not sustained any actual damages." *Matter of Bankers Tr. Co.*, 658 F.2d at 108. None of the three enumerated exceptions to awarding prejudgment interest apply here.

"The rate of prejudgment interest to be applied in admiralty and whether that interest is to be compounded is left to the sound discretion of the district court." *BP Expl. & Oil, Inc. v. Moran Mid-Atl. Corp.*, 147 F. Supp. 2d 333, 347 (D.N.J. 2001) (citing *Mentor Ins. Co. v. Brannkasse*, 996 F.2d 506, 520 (2d Cir. 1993)). The Court will award simple prejudgment interest from the filing of the complaint in this action, May 22, 2024. *See, e.g., United States for Use of Colo. Custom Rock Corp. v. G&C Fab-Con, LLC*, No. 20-02968, 2024 WL 4356306, at *16 (D.N.J. Oct. 1, 2024) (citations omitted). Since prejudgment interest here is governed by federal maritime law, the court is not restricted to state law interest rates and may "use their discretion to compensate a damaged plaintiff." *BP Expl. & Oil, Inc. v. Moran Mid-Atl. Corp.*, 147 F. Supp. 2d 333, 347 (D.N.J. 2001) (*City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 194–96 (1995)). The Court, nevertheless, exercises its discretion and applies the prejudgment interest under N.J. Ct. R. 4:42–11(b). *See, e.g., Lincoln Harbor Enters., LLC v. M.Y. Diplomat*, No. 08-526, 2008 WL 5046787, at *7 (D.N.J. Nov. 21, 2008) (awarding prejudgment interest in a maritime default judgment matter at the rate set by N.J. Ct. R. 4:42–11(b)). Thus, the applicable prejudgment rate for 2024 and 2025 is 5.5% and 7.5%, respectively.[9]

---

[9] The current prejudgment interest rates can be found at:

https://www.njcourts.gov/sites/default/files/courts/civil/postprejudgmentrates.pdf (last accessed April 10, 2025). According to the rates chart, revised August 20, 2024, the unadjusted rate is 3.5% for 2024 and 5.5% for 2025. Additionally, where the judgment exceeds $20,000, an additional 2% is added to the interest rate. N.J. Ct. R. 4:42-11(a)(iii). Thus, the adjusted interest rates for 2024 and 2025 are 5.5% and 7.5%, respectively.

The prejudgment interest is to accrue from May 22, 2024[10] (the filing of the Complaint) through April 11, 2025 (the date of this judgment) and is applied to the (i) slip rent postdating the State Court Judgment and (ii) negligence damages.

| Item | Total Amount | 2024 Interest | 2025 Interest | Total Interest |
|------|-------------|---------------|---------------|----------------|
| Slip Rent | $8,400 | $139.70[9] | $173.00 ($1.73 / day) | $312.70 |
| Negligence Damages | $10,000 | $337.81 | $205.00 ($2.05 / day) | $542.81 |
| | | | Total = | $855.51 |

Accordingly, the Court **AWARDS** Plaintiff prejudgment interest in the amount of $855.51.

## 4.    Attorneys' Fees & Costs

Plaintiff also seeks to collect attorneys' fees and costs. The Agreement between the parties states "[u]pon non-payment of the account(s), the undersigned agrees to pay the cost of collection, including court costs and attorney's fees incurred by Depth Charge Marine dba Captain Bill's Landing." (ECF No. 1-2 at 3.) Although there is not ordinarily a right to attorneys' fees in admiralty law, it is appropriate for courts to award fees when the contract provides for them. *See, e.g., Praxis Energy Agents Pte Ltd. v. M/V Pebble Beach*, No. 21-2809, 2022 WL 4480561, at *3 (3d Cir. Sept. 27, 2022). In such cases, a court is to award "reasonable attorneys' fees" consistent with the "prevailing hourly rates" and number of hours reasonably expended. *Id.*

As of the filing of the Motion for Default Judgment (ECF No. 24), Plaintiff's counsel has spent 88.2 hours at a rate of $350 per hour, totaling $30,870 in potential attorneys' fees. (*See* ECF No. 24-3 at 6–7.) In identifying a reasonable rate, the Court refers to the Community Legal Services ("CLS") of Philadelphia's table of reasonable hourly rates, which have been applied in the District of New Jersey. *See Americans for Prosperity v. Grewal*, No. 19-14228, 2021 WL

---

[10] For the purposes of calculating prejudgment interest on slip rent, the Court adopts Plaintiff's position that prejudgment interest on slip rent commences on September 13, 2024, the day Plaintiff became Substitute Custodian. (ECF No. 24-1 at 8 n.1.)

1153194, at *14 (D.N.J. Mar. 26, 2021) (collecting cases). Plaintiff's counsel Matthew T. Charles has been practicing law for over 16 years (Charles Decl. ¶ 5), which, according to CLS, would subject him to an hourly rate of between $535 and $625. Plaintiff's counsel's hourly rate is well below the CLS rate for his experience and is thus, reasonable. Therefore, the Court **AWARDS** attorneys' fees at a rate of $350 per hour, for a total of $30,870.

Plaintiff also seeks certain other costs pursuant to the Agreement, including $470.00 in process server fees, $17.66 in postage, and $6.00 in PACER fees, for a total of $493.66. (ECF No. 24-1 at 25; *see also* ECF No. 24-3 at 9.) The Court **AWARDS** Plaintiff $493.66 in other costs consistent with the Agreement. (*See* ECF No. 1-2 at 3.)

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Default Judgment is **GRANTED in PART** and otherwise **DENIED** as moot. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: April 11, 2025